UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CHRISTINE INCIARRANO,

      Plaintiff,

v.                                          CASE NO. 5:24-cv-511-SJH

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

_____/

## MEMORANDUM ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application under the Social Security Act ("Act") for Disability Insurance Benefits ("DIB"). In a decision dated March 13, 2024, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability from January 1, 2021, the alleged disability onset date, through the date of decision. Tr. at 8-22. For the reasons herein, the Commissioner's decision is due to be **affirmed**.

### I.    Issues on Appeal

Plaintiff argues two issues on appeal, contending that:

    I.    THE ALJ COMMITTED HARMFUL ERROR WHEN SHE OMITTED ANY MENTAL LIMITATIONS STEMMING FROM PLAINTIFF'S MENTAL IMPAIRMENTS IN THE RESIDUAL FUNCTIONAL CAPACITY ("RFC") ASSESSMENT.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.

> II. THE ALJ'S DETERMINATION THAT PLAINTIFF'S VENOUS INSUFFICIENCY COULD BE ACCOUNTED FOR BY INCLUDING A SIT/STAND OPTION IN THE RFC IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

Doc. 12 at 7. I find that both arguments lack merit.

## II.    Standard of Review

Plaintiff appeals the denial of her applications for DIB under Title II of the Act, 42 U.S.C. § 401 *et seq.*[2] Under 42 U.S.C. § 405(g), judicial review "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

The agency's factual findings are "conclusive" if "substantial evidence" supports them. *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 103 (citation omitted). Though requiring "'more than a mere scintilla'" of evidence, the threshold for this standard "is not high[,]" *id.*, and does not require a preponderance of the evidence, *Flowers v. Comm'r, Soc. Sec. Admin.*, 97 F.4th 1300, 1309 (11th Cir. 2024); *see also Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015). So long as "the ALJ's decision clears the low evidentiary bar[,]" a reviewing court must affirm even if it

---

[2] The regulations under Title II are located at 20 CFR pt. 404.

"would have reached a different result and even if a preponderance of the evidence weighs against the Commissioner's decision[.]" *Flowers*, 97 F.4th at 1309. Nor may a reviewing court "decide the facts anew, make credibility determinations, or re-weigh evidence." *Id.* at 1306 (quotation omitted); *see also Rodriguez v. Soc. Sec. Admin.*, 118 F.4th 1302, 1315 (11th Cir. 2024); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

The same deference does not attach to conclusions of law. *See Flowers*, 97 F.4th at 1304, 1306; *Martin*, 894 F.2d at 1529. A "failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal." *Martin*, 894 F.2d at 1529; *see also Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## III.    The ALJ's Decision

Under the Act's general statutory definition, a person is considered disabled if unable to engage in substantial gainful activity by reason of a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least 12 months. *See* 42 U.S.C. § 423(d)(1)(A).[3] In making a disability determination, the Social Security Administration generally uses a five-step sequential process. 20 C.F.R. § 404.1520(a)(4).[4]

---

[3] Because the definitions of disability under Title II and Title XVI of the Act are the same, cases under one statute are generally persuasive as to the other. *See Jones v. Astrue*, No. 3:10-cv-914-J-JBT, 2011 WL 13173806, at *2 n.2 (M.D. Fla. Oct. 17, 2011).

[4] At step one, the person must show the person is not engaged in substantial gainful activity. At step two, the person must show the person has a severe impairment or combination of impairments.

The ALJ applied this five-step sequential process. Tr. at 12-21.[5] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2021, the alleged disability onset date. Tr. at 13. The ALJ found at step two that Plaintiff had the following severe impairments: "degenerative disc disease (DDD), degenerative joint disease (DJD), venous insufficiency, and obesity (20 CFR 404.1520(c))." *Id.* (emphasis removed). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. *Id.* at 14. The ALJ found that Plaintiff had the following RFC:

> to perform light work as defined in 20 CFR 404.1567(b) except that she is limited to jobs that allow standing and sitting while remaining on task; she can perform all postural activities occasionally (climb stairs/ramps, balance, stoop, kneel, crouch and crawl), but never climb ladders, ropes, or scaffolds. She can frequently handle bilaterally. Additionally, she must avoid concentrated exposure to hazards, and extreme temperatures.

*Id.* at 15 (emphasis removed). The ALJ found at step four that Plaintiff is unable to perform any past relevant work, but found at step five that jobs exist in significant numbers in the national economy that she can perform, such that she has not been

---

At step three, the person may show the impairment or combination of impairments meets or equals the severity of one of the listings in the appendix of the applicable regulations. Absent such a showing, at step four, the person must show the person cannot perform the person's past relevant work given the person's residual functional capacity ("RFC"). Step five, at which the burden temporarily shifts to the Commissioner, asks whether there are a significant number of jobs in the national economy the person can perform given the person's RFC, age, education, and work experience. If it is determined at any step the person is or is not disabled, the analysis ends without proceeding further. *See* 20 C.F.R. § 404.1520(a)(4); *Flowers*, 97 F.4th at 1308; *Jacob v. Comm'r of Soc. Sec.*, No. 8:22-cv-2435-CEH-TGW, 2024 WL 3548902, at *3-4 (M.D. Fla. July 26, 2024).

[5] Title II of the Act "provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need." *Smith v. Berryhill*, 587 U.S. 471, 475 (2019) (quotation omitted). The ALJ found Plaintiff met the insured status requirements through December 31, 2025. Tr. at 13.

under a disability from the alleged date of onset though the date of decision. *Id.* at 20-21.

## IV.   Analysis

Plaintiff argues on appeal that:

> I.   THE ALJ COMMITTED HARMFUL ERROR WHEN SHE OMITTED ANY MENTAL LIMITATIONS STEMMING FROM PLAINTIFF'S MENTAL IMPAIRMENTS IN THE RESIDUAL FUNCTIONAL CAPACITY ("RFC") ASSESSMENT.
>
> II.   THE ALJ'S DETERMINATION THAT PLAINTIFF'S VENOUS INSUFFICIENCY COULD BE ACCOUNTED FOR BY INCLUDING A SIT/STAND OPTION IN THE RFC IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

Doc. 12 at 7. I address each argument in turn.

### a.  Issue I

Plaintiff first argues on appeal that the ALJ erred by not including any mental limitations in the RFC assessment. More specifically, Plaintiff argues (i) "the ALJ erred in finding Plaintiff had only mild limitations resulting from her depression and that the condition was a non-severe impairment"; and (ii) "irrespective of the severity determination at step two," the ALJ did not "properly evaluate Plaintiff's depression in combination with her chronic pain and pain management medications in assessing her RFC." *Id.* at 11. I am unpersuaded.

First, substantial evidence supports the ALJ's evaluation of depression being a non-severe impairment causing only mild limitations. At step two, the ALJ stated in pertinent part as follows:

> The record indicates a non-severe impairment of unspecified depressive disorder. The claimant has the following degree of limitation in the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: a mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself. The claimant testified that she is not under treatment for a mental health condition (Hearing Testimony). At a consultative psychological examination with Nicolas Gehle, PsyD, on February 17, 2022 (12F), examiner observations included that the claimant drove to the office alone; her mood was "alright", and affect was normal. The mental status examination was unremarkable except for recalling 2 out of 3 words after a short delay. She was assessed with unspecified depressive disorder (12F). Additionally, the medical evidence of record establishes that the claimant is independent in her activities of daily living. She has not required emergency department treatment or hospitalization for mental health symptoms during the period at issue.

Tr. at 14. In evaluating the RFC, the ALJ later stated in pertinent part as follows:

> The State agency psychological consultants at the initial and reconsideration levels, Sally Rowley, PsyD, February 21, 2022 (1A), and Madelyn Miranda-DeCollibus, PsyD, March 29, 2023 (4A), opined that the claimant's mental medically determinable impairment was non-severe and assessed no more than mild limitations in the "paragraph B' criteria (1A, 4A). The undersigned finds this opinion persuasive because the record does not indicate that the claimant was treated or diagnosed for a mental health disorder during the relevant period. Additionally, consultative psychological examination findings were mostly unremarkable. Consultative psychological examiner, Nicolas Gehle, PsyD, on February 17, 2022 (12F), observed that the claimant drove herself to the examination; and that the claimant reported her mood as "alright"; her affect was normal. The mental status examination was unremarkable except for 2/3 recall, after a short delay (Id.).

6

> ….
>
> Consultative psychological examiner, Nicholas Gehle, PsyD (12F), did not set forth specific functional abilities and/or limitations and as such their report has not been reviewed for persuasiveness but has been considered in the overall evidence. As to the doctor's statement that the claimant is capable of managing benefits, the undersigned finds persuasive because it is supported by the doctor's own unremarkable findings. As to the doctor's statement that the claimant's mental symptoms appear to moderately impact functioning, the undersigned finds not persuasive, because the mental status examination findings where almost unremarkable and there are no other notes on record to support limited mental functioning.

*Id.* at 19-20.

Plaintiff does not mention, much less contest, much of the foregoing. Plaintiff narrowly focuses on snippets of discussion to raise two arguments. First, Plaintiff contends that "[t]he ALJ's 'supportability' analysis" of "Dr. Gehle's opinion" "is not supported by substantial evidence" insofar as the ALJ's finding "that the mental status examination findings were 'almost unremarkable'" "is the equivalent of finding that the examination findings were remarkable" which "provides no support for the ALJ's decision to reject the opinion for moderate limitations" as "[i]t is simply a truism remarkable findings would support the moderate limitations Dr. Gehle assessed." Doc 12 at 12. Second, Plaintiff contends "the ALJ's hyperbolic finding that there are 'no other notes on record to support limited mental functioning' is factually inaccurate" because records of a consultative physical examination with Dr. Donald Tindall and a cardiology evaluation with Dr. Ali Nasser reflected symptoms of anxiety and hyperactivity, such that "there are certainly *some* medical notes that would support at

7

least moderate limitations in functioning from mental impairments" and "the ALJ's finding that Dr. Gehle's opinion that Plaintiff had at least moderate limitations was not consistent with the record is factually inaccurate and not supported by substantial evidence." Doc. 12 at 12-13. These arguments are unavailing.

With respect to Plaintiff's focus on the "almost unremarkable" comment, Plaintiff ignores the detailed other discussion by the ALJ as to the evaluation by Dr. Gehle, including (i) that he "observed that the claimant drove herself to the examination" that she "reported her mood as 'alright'" and that "her affect was normal"; and (ii) that "[t]he mental status examination was unremarkable except for 2/3 recall, after a short delay." Tr. at 20; *see also* Tr. at 14. The ALJ's *full* discussion of Dr. Gehle reflects a proper analysis, supported by substantial evidence, of why the mental-status examination was mostly unremarkable and why the one aspect that was not unremarkable in context supported at most mild limitations. *See id.*[6] This analysis is particularly supported by substantial evidence given Dr. Gehle's own notes. *See* Tr. at 956 ("Immediate memory appeared to be adequate as she was able to recall 3 of 3 words immediately after presentation and recent memory appeared to be *mildly*

---

[6] "[I]t is proper to read the ALJ's decision as a whole, and … it would be a needless formality to have the ALJ repeat substantially similar factual analyses[.]" *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1275 (11th Cir. 2024) (quotation omitted); *see also Betancourt v. Comm'r of Soc. Sec.*, No. 2:23-cv-111-KCD, 2023 WL 6993920, at *2 (M.D. Fla. Oct. 24, 2023); *Martin v. Comm'r of Soc. Sec.*, No. 8:22-cv-1435-JSS, 2023 WL 3644419, at *7 (M.D. Fla. May 25, 2023); *Jesus v. Comm'r of Soc. Sec.*, No. 6:20-cv-1930-EJK, 2022 WL 2293887, at *4 (M.D. Fla. Feb. 9, 2022).

*impaired* as she was able to recall 2 of the 3 words presented after a short delay."
(emphasis added)).

Plaintiff's argument as to the consistency of moderate mental limitations with
other medical records is equally unavailing. Plaintiff cites to medical records from Dr.
Tindall and Dr. Nasser, but she does not adequately articulate how such records
support moderate limitations. Dr. Tindall noted during a physical consultative
examination that Plaintiff was "quite anxious with intermittent hyperventilation" (but
was also alert and oriented). Tr. at 962. Dr. Nasser, during a cardiology evaluation,
noted that Plaintiff "is very hyperactive." *Id.* at 1160. Neither doctor treated or
evaluated Plaintiff for any mental impairments or opined as to limitations—much less
more-than-mild limitations—in functioning from mental impairments. Plaintiff has
failed to demonstrate that the ALJ's statement concerning a lack of "other notes on
record to support limited mental functioning" is factually inaccurate or unsupported
by substantial evidence. Tr. at 20.

Plaintiff next argues that, regardless of the severity determination at step two,
the ALJ did not "properly evaluate Plaintiff's depression in combination with her
chronic pain and pain management medications in assessing her RFC." Doc. 12 at 11.
This argument fails. The ALJ expressly stated that she considered the entire record
and all symptoms, and specifically stated that she considered all medically
determinable impairments, including those that were not severe, when assessing the
RFC. Tr. at 14-15; *see also Nichols v. Comm'r, Soc. Sec. Admin.*, 679 F. App'x 792, 797

(11th Cir. 2017). And the RFC discussion reflects as much. Tr. at 15-20. In addition to the analysis at step two, the ALJ specifically and properly discussed Plaintiff's mental impairment when evaluating the RFC, including *inter alia* (i) the evaluation of Dr. Gehle (discussed above), including Plaintiff's capability of managing benefits; and (ii) evaluations by two state-agency psychological consultants (each opining that Plaintiff's medically determinable impairment was non-severe and assessing no more than mild limitations in the "paragraph B" criteria). *Id.* at 19-20. Plaintiff's assignment of error fails. *See Blackmon v. Comm'r of Soc. Sec.*, No. 23-12894, 2024 WL 3495022, at *8 (11th Cir. July 22, 2024) ("Here, the ALJ did not err in failing to include any mental limitations in Blackmon's RFC because it appropriately considered the record evidence regarding her non-severe mental impairments at step four of the sequential evaluation, and its decision is supported by substantial evidence. … [A]t step four in relation to the RFC, the ALJ again reviewed Blackmon's activities related to adapting or managing herself and the persuasiveness of the psychological examiners. …Thus, the ALJ here considered whether Blackmon's mental limitations affected her RFC and concluded that they did not."); *Garcia v. Comm'r, Soc. Sec. Admin.*, No. 23-11184, 2023 WL 7404856, at *5 (11th Cir. Nov. 9, 2023) ("Contrary to Garcia's argument, the ALJ was not required to incorporate Garcia's mental impairments that he determined at step two in the rest of his RFC assessment because he found any impairments to be only mild, not moderate. … In formulating the RFC, the ALJ again detailed Garcia's mental impairments. … In doing such, the ALJ demonstrated that he considered all

10

evidence of record regarding Garcia's impairments, including those which he ultimately found nonsevere."); *Faircloth v. Comm'r of Soc. Sec.*, No. 6:21-cv-782-EJK, 2022 WL 2901218, at *2 (M.D. Fla. July 22, 2022) ("Notably, an ALJ is not required to include mental limitations in the RFC finding merely because he identified mild mental limitations in the PRT criteria. … Here, the ALJ addressed Plaintiff's mild mental limitations … by referencing Plaintiff's limitation in social interactions when making the RFC assessment. … Moreover, in explaining how he determined Plaintiff's RFC, the ALJ noted that he considered the findings of several state agency consulting physicians regarding Plaintiff's mental health.").[7] This independently sufficient analysis at step four is even further reinforced by the analysis, discussed above, at step two, including discussion of Plaintiff's independence in activities of daily living. Tr. at 14; *see also Prude v. Comm'r, Soc. Sec. Admin.*, No. 23-14198, 2024 WL 5103664, at *4 (11th Cir. Dec. 13, 2024).

---

[7] The authority cited by Plaintiff, such as *Roberson v. Kijakazi*, No. 8:20-cv-167-CPT, 2021 WL 9036513 (M.D. Fla. Sept. 30, 2021) and *Mitchell v. Comm'r of Soc. Sec.*, No. 2:20-cv-236-NPM, 2021 WL 4305088 (M.D. Fla. Sept. 22, 2021), is thus distinguishable. In those cases, unlike here, the ALJ failed to meaningfully discuss the non-severe mental impairments in the RFC analysis. *See Roberson*, 2021 WL 9036513, at *4 ("Despite specifically noting … that his Paragraph B findings at step two were not a substitute for the more detailed mental RFC assessment required at step four, the ALJ's subsequent step-four discussion regarding the Plaintiff's RFC contains no analysis of the Plaintiff's mental impairments. … Instead, the ALJ focused entirely on the record evidence relating to the Plaintiff's somatic conditions and associated complaints of pain and other limitations."); *Mitchell*, 2021 WL 4305088, at *6 ("Whether severe or not, the ALJ was required to explicitly consider Mitchell's mental impairments when assessing the RFC but failed to do so. In sum, the ALJ failed to expressly construct a logical bridge between his finding that Mitchell had mild impairments in all four areas of mental functioning and yet no limits whatsoever in the mental functions associated with work.").

### b. Issue II

Plaintiff next argues that substantial evidence does not support the ALJ's inclusion of a sit/stand option in the RFC to account for Plaintiff's venous insufficiency. Doc. 12 at 7. In this regard, Plaintiff argues: (i) though "vague, the implication" of the stand/sit limitation imposed by the ALJ "is that Plaintiff needs an accommodation to sit and stand at will during the workday"; (ii) the sufficiency of such a limitation "appears to be pure speculation"; and (iii) "the ALJ failed to explain how long Plaintiff would be able to maintain each posture and how she would remain on task despite having to alternate positions regularly throughout the day." *Id.* at 15-17. I am unpersuaded.

As Plaintiff acknowledges, the sit/stand option provided by the ALJ implicitly allows for sitting and standing at will. Doc. 12 at 16. No further specificity from the ALJ was required. *See Edgecomb v. Comm'r of Soc. Sec.*, 841 F. App'x 142, 145 (11th Cir. 2020); *Williams v. Barnhart*, 140 F. App'x 932, 937 (11th Cir. 2005); *Kelley v. Colvin*, No. 8:14-cv-2423-T-MCR, 2016 WL 626139, at *2 (M.D. Fla. Feb. 17, 2016); *see also Heppell-Libsansky v. Comm'r of Soc. Sec.*, 170 F. App'x 693, 697, 699 (11th Cir. 2006) (affirming ALJ's decision where ALJ discredited claimant's subjective testimony to the extent inconsistent with the objective medical evidence but "allowed for a 'sit/stand option'" in the RFC and hypothetical question to the vocational expert "given [the claimant's] subjective reports of difficulty sitting for prolonged periods of

time").[8] And Plaintiff points to no evidence that a more restrictive limitation was required in the RFC. Doc. 12 at 15-18; *see Heller v. Colvin*, No. 3:13-cv-1494-J-JRK, 2015 WL 78142, at *8 (M.D. Fla. Jan. 6, 2015) ("Plaintiff fails to direct the Court to any objective medical evidence on record that would compel a more restrictive RFC in this case."); *see also Rosen v. Comm'r of Soc. Sec.*, No. 5:19-cv-516-PRL, 2021 WL 9802333, at *3 (M.D. Fla. Mar. 8, 2021); *Cabral v. Saul*, No. 8:18-cv-1310-T-30-TGW, 2019 WL 4228939, at *8 (M.D. Fla. Aug. 20, 2019), *report and recommendation adopted*, 2019 WL 4222239 (M.D. Fla. Sept. 5, 2019); *Schell v. Colvin,* No. 8:14-cv-1537-T-TBM, 2015 WL 12856464, at *4 (M.D. Fla. Aug. 24, 2015); *Slaughter v. Astrue*, No. 8:10-cv-2353-T-TGW, 2011 WL 4551563, at *5 (M.D. Fla. Sept. 30, 2011).

Moreover, the vocational expert ("VE") identified multiple jobs that could be performed with Plaintiff's limitations and an at-will sit/stand option, including one where sitting and standing at will was inherent in the position. Tr. at 21, 50-51. Plaintiff has failed to cite "any evidence that [s]he could not perform" the jobs identified by the VE "based on [her] ability to sit or stand for any period of time. This failure prohibits [her] from establishing [her] burden of his inability to perform the identified jobs." *Williams*, 140 F. App'x at 937; *see also Edgecomb*, 841 F. App'x at 145-46 ("The reasonable implication of the ALJ's inclusion of a 'sit/stand option' was that the

---

[8] The undersigned further notes that an explicit statement as to the frequency of a stand/sit option would not otherwise appear required given Plaintiff's RFC to perform light work. *See* Tr. at 15; *see also Hart v. Colvin*, No. 5:12-cv-156-EMT, 2013 WL 4736841, at *15 (N.D. Fla. Aug. 30, 2013); *Kestler v. Astrue*, No. 2:10-cv-00220-DNF, 2011 WL 4005898, at *11 (M.D. Fla. Sept. 9, 2011).

option would be at Edgecomb's own volition. Thus, the frequency that Edgecomb would need to alternate positions did not impact the VE's determination of which jobs Edgecomb could perform. … Edgecomb did not offer any evidence that he could not perform the jobs identified by the VE based on his ability to sit or stand for any period of time, and thus did not satisfy his burden of showing that he could not perform the jobs proposed by the VE."); *Hart v. Colvin*, No. 5:12-cv-156-EMT, 2013 WL 4736841, at *16 (N.D. Fla. Aug. 30, 2013).

## V.    Conclusion

Accordingly, it is **ORDERED**:

1.    The Commissioner's decision is **affirmed**.

2.    The Clerk of Court is **directed** to enter judgment accordingly, terminate any motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, on February 7, 2025.

_____
Samuel J. Horovitz
United States Magistrate Judge

Copies to:

Counsel of Record

14